**M. P. HOWLETT, Inc., v. THE CATHERINE CARROLL et al.**

**THE HOWLETT NO. 28.**

**Petition of CARROLL TOWING CO., Inc.**

**Nos. 16705, 16819.**

District Court, E. D. New York.

May 10, 1944.

Foley & Martin, of New York City (Christopher Heckman, of New York City, of counsel), for Carroll Towing Co., Inc.

Hagen & Eidenbach, of New York City (Charles W. Hagen, of New York City, of counsel), for M. P. Howlett, Inc.

Donovan, Leisure, Newton & Lumbard, of New York City (Lloyd F. MacMahon and James V. Hayes, both of New York City, of counsel), for Shelton Pitney and Walter Gardner, Trustees of Central R. Co. of New Jersey.

CAMPBELL, District Judge.

This is a proceeding for limitation of liability and libel to recover damages to the Barge Howlett No. 28.

There is no objection to the proceedings for limitation of liability.

The Trustees of the Central Railroad Company of New Jersey, having gone so far as to withdraw their claim, in the limitation proceedings, for damage to the Bridge.

The libel was filed against the Tug Catherine Carroll, and Carroll Towing Company, Inc., for damages to the Barge Howlett No. 28, and the Carroll Towing Company, Inc., and the Trustees of the Central Railroad Company of New Jersey were impleaded on the petition of the Carroll Towing Company, Inc., under the 56th Rule in Admiralty, 28 U.S.C.A. following section 723.

The Central Railroad Company of New Jersey maintained a Bridge across Newark Bay. There are two draw spans in the Bridge for the passage of Maritime traffic, the channel under the easterly draw is about 140 feet wide at its narrowest point. The channel under the westerly draw is about 240 feet wide at its narrowest point. As tugs approach the Bridge from the south there is an unobstructed view for several thousand feet; at night the Bridge is equipped with navigation and marker lights.

The center abutment to the Bridge is supposed to be protected by fenders.

Nearest the permanent piers are groups of piles embedded in the river bottom, so that they will spring when pressure is exerted against them. On the outer side of these groups of piles are whalers, i. e., timbers running horizontally, at least the lower course of such whalers being covered at low water, the middle one being out of water at some stages of the tide, and the top course being always above water. Outside of the whalers is a row of single piles, spaced at regular intervals. On the outer

side of this row of single piles are timbers running horizontally, variously referred to in the testimony as ribbons, facing pieces and sheathing. At the lower end of this construction, which constitutes the fender rack, is a large cluster of spring spiles, referred to herein as the main clump. When the main clump is in place the ends of the whalers and sheathing pieces are inside the spiles of the main clump and protected by it. The main clump will give or spring when struck by a passing vessel.

Both the Bridge Inspector and the Operator on duty at the time of this occurrence, admitted that vessels using the draw of the Bridge customarily strike against various parts of the fender rack while going through. This is particularly so when a tug is bound northward with a hawser tow on the flood tide.

On an examination, made by the Bridge Inspector of the Central Railroad Company of New Jersey, on June 4, 1942, about four months before the occurrence, he found the main clump missing, and also seven of the single spiles between the whalers and the sheathing pieces being the seven nearest the main clump, also missing. This left the ends of the whalers and the ends of the sheathing pieces or ribbons exposed, and unprotected on their ends. This was reported by the Inspector to his superior, but no repairs were made, until after the occurrence here in question. This constituted a menace to navigation. It is also quite clear that no special warning was given at night as the same type of red light, which under normal conditions was placed on the large cluster of the so-called main clump, was the light shown at night. This red light was in all respects similar to the red light placed on the end of every bridge abutment, with which the Central Railroad Company's employees were familiar. There was nothing to indicate to a navigator approaching the Bridge at night that the condition of the fender rack was any different than normally.

The tug Catherine Carroll had made up her tow tandem, the Howlett No. 15 being the head boat.

The hawsers between the tug Catherine Carroll and the Howlett No. 15 were 45 feet in length, and between the Howlett No. 15 and the Howlett No. 28, about six feet in length.

Early in the morning of October 18, 1942, the tug Catherine Carroll with the Howlett No. 15 and the Howlett No. 28 in tow, was proceeding with the tide up Newark Bay in a northerly direction. The night was clear and the tide three quarters flood with a cross current flowing in a northeasterly direction with considerable velocity. When the tug reached a point some distance south of the Bridge, it sounded a three blast signal for an opening of the draw span. The drawbridge Captain immediately sounded a two blast answering signal, warning the tug to hold back, until a train had cleared the Bridge. The tug did not turn into the tide, but continued up the Bay in a northeasterly direction, the total length of the tug and tow was about 325 feet.

Immediately after the train had passed over the Bridge, the drawbridge Captain commenced to raise the westerly draw span, and gave the tug a three-blast signal, indicating that the span would be raised.

The tug and tow had drifted into the easterly channel, upon receipt of the drawbridge Captain's signal, and the tug proceeded at an angle towards the westerly channel, the tug and the Howlett No. 15 entered the westerly channel close to the easterly fender rack, and the starboard stern of the Howlett No. 15 touched the fender and swung away, but the starboard bow of the Howlett No. 28 came into contact with the southeast corner of the rack, and was impaled on the exposed ends of the whalers and sheathing pieces broke away, and went up to the east and though followed by the tug sunk just beyond the Bridge.

Clearly, it was the duty of the Central Railroad Company of New Jersey, with all the notice that it had, to remove this menace, and not only that, they gave no notice of the existence of the menace to navigation. There was an attempt to show that the Captain of the tug had been through the Bridge several times while the menace existed, and should have known of its existence. In my opinion that is not so.

■ It is common knowledge that fenders are provided at Bridge abutments, both for the protection of the abutment, and the boats passing through. This is clearly shown in the case of the No. 15 where the fender performed its expected duty in the usual manner, and this is what the Captain of the tug undoubtedly expected with reference to the No. 28.

■ The tug Catherine Carroll, and Carroll Towing Company, Inc., and the libellant, are without fault or blame.

468

Shelton Pitney and Walter P. Gardner, as Trustees of the Central Railroad Company of New Jersey, are solely and wholly at fault and to blame.

In the limitation proceeding, a decree should be entered in favor of the petitioner against all persons granting limitation without costs.

. In the libel, a decree should be entered in favor of the libellant against the respondent-impleaded, the Trustees of the Central Railroad Company of New Jersey, with costs, and the usual order of reference, and dismissing the libel as to the respondent the tug Catherine Carroll and the Carroll Towing Company, Inc., without costs.